USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11 AUG 09

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X
MORGAN STANLEY & CO. INC.,

        Cross-Claim Plaintiff,

    -against-

JP MORGAN CHASE BANK, N.A.,

        Cross-Claim Defendant.
------------------------------------------X

06 Civ. 121 (DAB)
ORDER

DEBORAH A. BATTS, United States District Judge.

    Burson-Marsteller, LLC ("Burson") is a public relations firm that, in March 2004, made a payment of $775,000 to Column Financial ("Column") for its monthly rent. (Compl. ¶¶ 1, 3.) At all times relevant to this action Burson paid their monthly rent checks directly to a "lockbox" operation at JP Morgan Chase Bank, N.A. (Am. Cross-cl. ¶ 7.) At a hearing before this Court the Parties represented that, "[p]ursuant to directions by the landlord, Burson was directed to send its rent checks to the servicing arm of its landlord's lender [Column Financial], meaning it was directly paying down the landlord's mortgage. It was a convenience to the landlord… So the checks just went to a lockbox on behalf of the servicing arm." (See Tr., April 20, 2007, 9:16-25.) Burson alleges that the check was intercepted, fraudulently endorsed and deposited in an account at Morgan Stanley Dean Witter in Philadelphia, Pennsylvania on March 25, 2004. (Compl. ¶¶ 1, 3.)

On January 6, 2006 Burson filed a Complaint against their bank, Wachovia Bank, N.A. ("Wachovia") seeking damages in connection with the allegedly stolen rent check. (Compl. ¶ 28.) Wachovia denied the material allegations of the Complaint and commenced a third-party action against Morgan Stanley and Discover Bank, the bank where the allegedly stolen check was deposited. (Am. Cross-cl. ¶ 1.)

Pursuant to the Stipulation and Order as to the Joinder of JP Morgan Chase Bank, N.A., which was entered on January 4, 2007 and joined Chase as a party to this action, Morgan Stanley filed a Cross-Claim against Chase. (06 Civ. 121, Dkt. No. 30.) Pursuant to a Defense and Indemnity Agreement between Morgan Stanley and Wachovia, dated April 10, 2007, Morgan Stanley assigned to Wachovia all claims it had or may have had against Chase. (Am. Cross-cl. ¶ 3.)  On April 30, 2007 Wachovia filed a Cross-Claim against Chase. (Am. Cross-cl. ¶ 3.)  In or about June 2007, pursuant to a "General Releases and Settlement Agreement" between Burson and Morgan Stanley, Morgan Stanley paid Burson seven hundred and fifteen thousand dollars to settle Burson's claim against Wachovia. (Am. Cross-cl. ¶ 4.) Accordingly, Burson's Complaint was dismissed. (Am. Cross-cl. ¶ 4.)  On or about July 2007, Wachovia and Morgan Stanley amended the Defense and Indemnity Agreement to assign all claims

Wachovia had against Chase to Morgan Stanley, including, without limitation, the claims Morgan Stanley has previously assigned to Wachovia. (Am. Cross-cl. ¶ 5.)  On July 12, 2007, this Court granted Morgan Stanley's request to re-caption this action as "Morgan Stanley & Co. Incorporated v. JP Morgan Chase Bank, N.A.", substituting Morgan Stanley for Wachovia as the Cross-Claimant. (Am. Cross-cl. ¶ 6; 06 Civ. 121, Dkt. No. 47.)

Now before this Court is Cross-Claim Defendant JP Morgan Chase Bank, N.A.'s ( "Chase" or "Defendant") Motion to Dismiss Cross-Claim Plaintiff Morgan Stanley's (hereafter "Morgan Stanley" or "Plaintiff") Amended Cross-Claim for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

For the reasons contained herein, Defendant's Motion is DENIED.

## I. FACTUAL BACKGROUND

The following facts, which are alleged in Burson's original Complaint, are included by way of background.  Additional facts, alleged in the Amended Cross-Claim in 06 Civ. 121 (DAB) (Dkt. No. 50), are assumed to be true for the purposes of this Memorandum and Order.

At all times relevant to the Complaint, Burson maintained a bank account with Wachovia, against which they wrote checks in order to pay their rent. (Compl. ¶ 2.) "At all times relevant to this case, Burson was obliged to pay its monthly rent checks to a Chase 'lockbox' operation in New York City." (Am. Cross-cl. ¶ 7.)

On or about March 1, 2004, Burson sent a check for $775,000 to the lockbox at Chase for its monthly rent payment. (Compl. ¶ 12.) In or about February 2005, Burson was notified by Column that rent for March 2004 had not been paid. (Compl. ¶ 23.) On or about June 30, 2005, Burson paid another $775,000 to Column for rent. (Compl. ¶ 26.)

The original check, Burson originally plead, was diverted and "fell into the hands of 'fraudsters.'" (Am. Cross-cl. ¶ 8.) A Chase employee named Gregory Halley, who has since pleaded guilty to stealing checks from Chase's lockbox, allegedly set up a fraudulent account at Morgan Stanley Dean Witter. (Compl. ¶ 14.; Am. Cross-cl. Ex. C.) Burson alleged that the original check for $775,000 was fraudulently endorsed and deposited into a Morgan Stanley Dean Witter account in Philadelphia. (Compl. ¶¶ 14, 15.) Accordingly, $775,000 was transferred from Burson's account at Wachovia, to the account at Morgan Stanley, causing Burson a loss of $775,000. (Compl. ¶¶ 14, 15, 28.)

An August 2006 press release from the U.S. Attorney's Office and a September 2006 letter that Burson received from the U.S. Postal Inspection Service, New York Division, described a $100 million theft ring at the Chase Lockbox facility. (Am. Cross-cl. ¶ 9.)  The letter stated, in relevant part,

> Over the past two years the United States Postal Inspection Service has been inundated with complaints regarding the theft of high denomination checks addressed to the J.P. Morgan Chase Lock Box operation. In April 2005, Chase investigators contacted the Postal Inspection Service and requested assistance regarding the theft of the checks. Postal Inspectors worked closely with Chase investigators and identified a Chase employee who has been stealing business checks from their Lock Box operation since 2005.
>
> To date, four suspects have been arrested and more than $100 million in stolen checks have been linked to this case. In addition, the arrest of these suspects has diminished further losses to several Fortune 500 companies.
>
> Your Company has been identified as a potential victim in this case.

(Am. Cross-cl. ¶ 9.)

## II. PROCEDURAL BACKGROUND

On or about January 5, 2006 Burson filed a Complaint against Wachovia claiming the $775k payable to "Column Financial Inc." had a forged endorsement and was improperly paid. (Compl. ¶¶ 1-3.)  Wachovia denied all allegations and filed a Third Party Complaint against Morgan Stanley. (Am. Cross-cl. ¶ 1.)

Morgan Stanley filed a Cross-Claim against Chase. (Am. Cross-cl. ¶ 2.) At a hearing on April 20, 2007, all parties agreed that Burson should be repaid, but disagreed as to where the funds should come from. (See Tr., April 20, 2007, 3:1-5, 5:1-15.)

In April 2007, Morgan Stanley and Wachovia entered into a "Defense and Indemnity Agreement" by which, among other things, Morgan Stanley assigned to Wachovia all claims it had or may have against Chase. (Am. Cross-cl. ¶ 3.) Wachovia then filed a Cross-Claim against Chase. (Id.) Pursuant to a subsequently entered "General Releases and Settlement Agreement", Morgan Stanley paid $715,000 to Burson to settle Burson's claim and Burson's Complaint against Wachovia was dismissed. (Am. Cross-cl. ¶ 4.) By letter dated July 11, 2007, and Memo Endorsed on July 12, 2007, counsel for Morgan Stanley requested that Wachovia be removed as a party to the Cross-Claim against Chase, that Morgan Stanley be substituted in lieu of Wachovia, and the action be recaptioned. (Am. Cross-cl. ¶ 6.) This request was granted and Wachovia has withdrawn from this action. (Am. Cross-cl. ¶ 6.) Morgan Stanley is now seeking to hold Chase liable for the full amount of the settlement or for contribution for the equitable share attributable to Chase's culpability. (Am. Cross-cl. ¶ 36.)

In their Amended Cross-Claim, Plaintiff Morgan Stanley asserts two causes of action against defendant Chase. Plaintiff alleges a claim under the UCC stating that receipt of the check at the "lockbox" facility imposes a duty on Defendant Chase as a "Collecting Bank" and/or a "Depository Bank" (as the UCC defines those terms) to exercise ordinary care in their handling of the check. (Am. Cross-cl. ¶ 31.) Plaintiff also alleges a claim of negligence in operating the "lockbox" facility. (Am. Cross-cl. ¶ 22; Pl.'s Mem. at 12.)

### III. DISCUSSION

#### A. Legal Standard for a Motion to Dismiss

For a complaint to survive dismissal under Rule 12(b)(6), the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility," the Supreme Court has explained,

> [W]hen the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'

Ashcroft v. Iqbal, --- S.Ct. ----, 2009 WL 1361536, *12 (May 18, 2009) (quoting Twombly, 550 U.S. at 556-57). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal quotation marks omitted). "In keeping with these principles," the Supreme Court has stated,

> [A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Iqbal, 2009 WL 1361536 at *13.

In ruling on a 12(b)(6) motion, a court may consider the complaint as well as "any written instrument attached to the complaint as an exhibit or any statements or documents incorporated in it by reference." Zdenek Marek v. Old Navy (Apparel) Inc., 348 F.Supp.2d 275, 279 (S.D.N.Y. 2004) (citing Yak v. Bank Brussels Lambert, 252 F.3d 127, 130 (2d Cir. 2001) (internal quotations omitted)).

B.  Liability under the NY-UCC

Morgan Stanley's Second Cross-Claim seeks recovery under the New York Uniform Commercial Code ("NY-UCC"). The NY-UCC defines several categories of banks to which it assigns duties of care. For example it defines "Depository Bank" as "the first bank to which an item is transferred for collection even though it is also the payor bank; "Payor bank" means a bank by which an item is payable as drawn or accepted; "Intermediary bank" means any bank to which an item is transferred in course of collection except the depositary or payor bank; "Collecting bank" means any bank handling the item for collection except the payor bank; "Presenting bank" means any bank presenting an item except a payor bank; "Remitting bank" means any payor or intermediary bank remitting for an item. NY-UCC § 4-105(a)-(f).

Chase attempts to claim that it "is neither the drawer nor payee of the Check, never accepted the Check for payment or collection, and in short, played no role that could conceivably give rise to liability under the UCC." (Def.'s Mem. of Law at 3.) Chase goes on to describe Morgan Stanley's argument as "devoid of any basis in law or logic." (Id. at 14.) But contrary to Chase's assertion that it had "no role" in the collection of the check, it repeatedly received checks from Burson and credited those checks to the account of Chase's

9

client, Column Financial. Chase attempts to argue that because it did not credit the allegedly stolen check to any account in this one instance, the check was only "delivered" to Chase's lockbox but Chase was not involved in "handling an item for collection" as that term is understood under the UCC. (Id.) However, such reasoning is contrary to the plain language of the statute. A collecting bank means "any" bank other than a "payor bank" involved in "handling" an item for collection. Chase is certainly not the Payor bank in this instance. And, the statute does not distinguish between a bank that credits an account or not, but rather uses the more general terminology "handling." The Court declines to read into the statute an exception for those banks that "handle" a check but do not credit it to any account. The statute is clear on it's face and, by it's terms, applies to Chase bank's operation of its lockbox.

Consequently, as a Collecting Bank Chase was bound to exercise ordinary care in "presenting an item or sending it for presentment." NY UCC § 4-202. Because Morgan Stanley has alleged that Chase "breached its duty of ordinary care when it negligently or recklessly allowed its employees or agents or other Parties to steal the Rent Check" Morgan Stanley's Motion to Dismiss Chase's Second Cross Claim must be DENIED. (Am. Cross-Cl. at ¶ 35.)

C.  Liability Under a Negligence Theory

Under New York law, in order to recover under a theory of negligence "a successful plaintiff must demonstrate the existence of a duty, the breach of which may be considered the proximate cause of the damages suffered by the injured party." Becker v. Schwartz, 46 N.Y.2d 401, 410 (N.Y. 1978).

a.  Duty of Care

Defendant, Chase, has moved to dismiss the claim of negligence on the grounds that there is no duty of care owed by Chase to non-clients such as Burson. Indeed, all elements of a negligence claim flow from the presence of a duty. "In the absence of duty, as a matter of law, no liability can ensue." Alfaro v. Wal-Mart Stores, Inc., 210 F.3d 111, 114 (2d. Cir. 2000). As far as this Court is aware, no New York Court has ruled on the existence of a duty to non-customers using a bank's "lockbox" facility.

In determining whether a duty of care exists in a given situation the Court must look to various factors. "[D]uty, in negligence cases, may be defined as an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another." Carrillo v. Kreckel, 352 N.Y.S.2d 730, 733 (N.Y. Sup. Ct. 1974) (citing Prosser, Law of

11

Torts [4th ed.], § 53.)  The Court must look at common concepts of logic, moral considerations, necessity of court regulation, social consequences and public policy considerations. The existence of a common-law duty in a negligence case is a threshold question of law for the court.  Hayes v. Riverbend Housing Co., Inc., 836 N.Y.S.2d 589, 590 (N.Y. App. Div. 1 Dept. 2007).  The extent of a duty depends on the particular circumstances.  Id.  In ruling on a duty as a matter of law, the court is to apply a broad range of societal and policy factors. Id.

As a matter of public policy both litigants remaining in this suit argue that the opposing party was in the best position to prevent the loss to Burson.  Chase alleges that Morgan Stanley was in the best position to have prevented the fraud as their bank deposited the check relying on an allegedly fraudulent endorsement.  (Def. Rep. Mem. of law at 9-10.) Likewise, Morgan Stanley argues that Chase was in the best position to prevent the loss because they had control over the lockbox facility where one of their employees was operating a theft ring.

The Court need not reach its conclusion on public policy grounds alone, however, because under either a theory of

voluntary assumption of duty or bailments Plaintiff's Cross-Claims would survive a motion to dismiss.

One factor in determining if a duty has arisen between a plaintiff and defendant is the principle that voluntary assumption of an action imposes a duty of reasonable care in the performance of that action. Under New York law anyone who voluntarily assumes a duty can be held liable for negligence in the performance of that duty. Indeed, "[o]ne who assumes a duty to act, even though gratuitously, may thereby become subject to the duty of acting carefully." Kaplan v. Dart Towing, Inc., 552 N.Y.S.2d 665, 667 (N.Y. App. Div. 2d Dep't 1990). "[T]he question is whether defendant's conduct placed plaintiff in a more vulnerable position than plaintiff would have been in had defendant done nothing." Heard v. City of New York, 82 N.Y.2d 66, 72 (N.Y. 1993).

Plaintiff claims that because Chase allows noncustomers to utilize their "lockbox" facility in order to pay rent to customers, Chase has voluntarily accepted a duty of care as to those individuals who utilize that service. The Court finds that by operating a "lockbox", Chase voluntarily assumed a duty of reasonable care to foreseeable noncustomers, because, except for Chase's offer of a lockbox service, those noncustomers would

never have been vulnerable to the fraud scheme at Chase's facility.

This conclusion is further supported by the law of bailments in New York. Under New York law, "bailment" is defined as a "delivery of personal property for some particular purpose, or a mere deposit, upon a contract express or implied, providing that after such purpose has been fulfilled it shall be redelivered to the person who delivered it, or otherwise dealt with according to his directions or kept until he reclaims it, as the case may be." Herrington v. Verrilli, 151 F.Supp.2d 449, 457 (S.D.N.Y. 2001).

> A bailment may be created by operation of law. It is the element of lawful possession, and the duty to account for the thing as the property of another, that creates the bailment, whether such possession results from contract or is otherwise lawfully obtained. It makes no difference whether the thing be intrusted to a person by the owner or by another. Taking lawful possession without present intent to appropriate creates a bailment.

Pivar v. Graduate School of Figurative Art of the New York Academy of Art, 735 N.Y.S.2d 522, 524 (N.Y. App. Div. 1 Dept. 2002) (citing Foulke v. New York Consolicated R.R. Co., 228 N.Y. 269, 275 (N.Y. 1920)).

Although no Court has addressed the question of bailments created by a lockbox operation, the Court is guided by case law regarding the analogous situation of night deposit facilities.

"[W]ith respect to the use of night deposit facilities, prior to the bank's crediting the amount of the deposit to the customer's account, the relationship between the customer and the bank is that of bailor and bailee."  Gramore Stores, Inc. v. Bankers Trust Co., 402 N.Y.S.2d 326, 327 (N.Y.Sup. 1978).  "[W]here a deposit is made in a depository, such as a night depository, available for that purpose during a period other than regular banking hours, the relationship between the bank and the customer is one of ordinary bailment for mutual benefit. The bank, as bailee, is thus required to exercise reasonable care in safeguarding the bailor's property and answerable for any loss due to its negligence or lack of ordinary, reasonable care." Roscoe v. Central Nat. Bank of Canajoharie, 409 N.Y.S.2d 189, 191 (N.Y.Sup. 1978).  "Until a deposit bag is opened and the contents credited to the depositor's account, the relationship between the bank and its night depository customer is that of bailor and bailee and only ordinary care is required of the bank in operating the facility as the bailment is one of mutual benefit." Employers Insurance of Wausau v. Chemical Bank, 459 N.Y.S.2d 238, 239 (N.Y.Civ.Ct. 1983).  In determining whether or not a bailment has been created in a night depository situation "[the] trier of facts . . . should [take] into account . . .

depositor's prior deposit history, method of depositing, his overall character and corroboration." Id. at 240.

In this case, Plaintiff alleges that a bailment was created, in that receipt of the rent check by Chase imposes a duty of reasonable care. (Pl.'s Mem. Law at 12.) The law of bailments supports a holding that a duty has arisen in this situation. A "lockbox" facility and a night drop box are sufficiently analogous in terms of practice and use that, in this narrow circumstance, both should be treated as creating a bailment. The fact that it was a noncustomer, Burson, who sent the check to the lockbox is not dispostive where, as here, Chase took lawful possession of the check without intent to appropriate it.

Consequently, the Court finds that Plaintiff has plead sufficiently a duty of care.

### b. Breach of the Chase's Duty to Burson

"Whether a breach of duty has occurred depends upon whether the resulting injury was a reasonably foreseeable consequence of the defendant's conduct." Danielenko v. Kinney Rent a Car Inc. 455 N.Y.2d 555, 558 (N.Y. 1982). Additionally, the harm must be foreseeable at the moment the action is undertaken, not simply

16

in hindsight.  "Whether hindsight reveals that greater precaution could have been taken to avoid the harm that eventuated is irrelevant if the injury could not reasonably have been foreseen at the moment the defendant engaged in the activity which later proves harmful." Id.

Plaintiff claims, that because Chase knowingly allows noncustomers to utilize their "lockbox" facility in order to pay rent to Chase's customers, those noncustomers are foreseeable victims if the facility is operated negligently. (Am. Cross-cl. ¶¶ 22, 23.)  Additionally, because Burson's practice of sending rent checks to the "lockbox" was ongoing for several months, Burson claims the harm in this case was reasonably foreseeable. (Am. Cross-cl.¶ 26.)

Chase was aware that Burson had been sending checks to the "lockbox" over a substantial period of time for the purposes of paying rent to their landlord's account at Chase. (See Compl. ¶¶¶¶ 1,12,23,26; Am. Cross-cl. ¶ 7)  Based on this pattern of repeated use, the Court agrees that Burson both had a reasonable expectation of care from Chase in the operation of their facility, and was a reasonably foreseeable victim if Chase were to operate the facility in a negligent manner.

17

        c.    Harm and the Law of Economic Loss

Under New York law, a claim of negligence can only be made when the actions of the defendant have caused physical harm to the plaintiff or plaintiffs' property. "[A]ctionable negligence requires injury to person or property as the proximate result of the allegedly negligent act". Greco v. National Transp. Co., 222 N.Y.S.2d 145, 146 (N.Y. App. Div. 1st Dep't 1961). If the harm sustained is purely economic, then a claim of negligence is not actionable because "in the absence of any alleged physical property damage, the connection between defendants' activities and plaintiff's economic losses alleged to have resulted from the [defendant's] action is too tenuous and remote to permit recovery on any tort theory." Goldberg Weprin & Ultin, LLP v. Tishman Const. Corp., 713 N.Y.S.2d 57, 58 (N.Y. 2000).

In the present case Plaintiff argues that because a bailment is created by Chase's receipt of the check in the "lockbox", the loss is one of property and not one of purely economic loss. (Pl.'s Mem. Law at 12.)

Consequently Plaintiff has plead sufficiently a claim of negligence and Defendant's Motion to Dismiss Morgan Stanley's First Cross-Claim is DENIED.

## III. CONCLUSION

Because Plaintiff has plead sufficiently both a UCC cause of action and common law negligence, Defendant's Motion to Dismiss the First and Second Cross-claims is DENIED.

Defendant is HEREBY directed to ANSWER the Complaint within 30 days of the date of this ORDER. The Clerk of the Court is directed to terminate all pending motions.

SO ORDERED.

Dated:   New York, New York

_August 11, 2009_

_Deborah A. Batts_
Deborah A. Batts
United States District Judge